# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RICKY MCNEAL,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )     Case No. CIV-20-488-AMG |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **ACTINGCOMMISSIONER OF** | ) |
| **SOCIAL SECURITY,**[1] | ) |
| | ) |
|     **Respondent.** | ) |

## MEMORANDUM OPINION AND ORDER

Ricky McNeal ("Plaintiff"), brings this action for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits ("DIB") under the Social Security Act. (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR"). (Docs. 13, 14). The parties have briefed their respective positions (Docs. 19, 26)[2] and consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 17, 18). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** Defendant Commissioner's decision.

---

[1] Kilolo Kijakazi is the Acting Commissioner of the Social Security Administration and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

## I. The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is

engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[3] whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the Plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if he is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a

---

[3] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History

On December 20, 2018, Plaintiff filed an application for DIB, alleging a disability onset date of November 1, 2017. (AR, at 15). The SSA denied the application initially and on reconsideration. (*Id.* at 48, 77). An administrative hearing was held on December 4, 2019. (*Id.* at 15). The Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.* at 15-26). The Appeals Council denied Plaintiff's request for review. (*Id.* at 1-6). Thus, the ALJ's decision is the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## III.     The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2017, the alleged onset date.  (AR, at 18).

At Step Two, the ALJ found that Plaintiff had the severe impairments of affective disorder, dysfunctional major joints, migraine headaches, obesity, and post-traumatic stress syndrome (PTSD).[4]  (*Id*. at 17).

At Step Three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 18-19).

The ALJ then determined that Plaintiff had the RFC to perform light work with the following limitations: "occasional kneeling; occasional changes in work setting; occasional interaction with the public, coworkers and supervisors."  (*Id.* at 19-24).

At Step Four, the ALJ found that Plaintiff could not perform any past relevant work.  (*Id.* at 24).  At Step Five, the ALJ relied on the testimony of a vocational expert ("VE") and found that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as merchandise marker, bottling line attendant, and collator.  (*Id.* at 24-25).  Therefore, the ALJ concluded that Plaintiff was not disabled for purposes of the SSA.  (*Id.* at 25-26).

---

[4] The ALJ also found Plaintiff had the following non-severe impairments: hypertension, sleep apnea, and left knee pain.  (AR, at 17).

**IV.     Issues Presented for Judicial Review**

Plaintiff contends that the ALJ did not properly consider the opinion of a consultative examining doctor about his mental status (Doc. 19, at 8-11) and that the ALJ improperly analyzed his symptoms relating to his headaches and left knee. (*Id*. at 3-8).

**V.     Analysis.**

    **A.     The ALJ Did Not Err in Considering Dr. Gattis's Psychological Evaluation Report.**

Plaintiff presented to Dr. Deann M. Gattis, Ph.D., for a consultative examination on January 24, 2019. (AR, at 329). Dr. Gattis subsequently prepared a Psychological Evaluation Report in which she summarized her interview with Plaintiff and diagnosed him with major depressive disorder and moderate recurrent and posttraumatic stress disorder. (*Id.* at 329-33). The ALJ extensively summarized the report in the decision. (*Id.* at 21-22). Noting objective test results contained in the report, the ALJ found the "mental status examinations have demonstrated no more than 'moderate' degrees of limitation." (*Id.* at 23).

Plaintiff contends that the ALJ erred because Dr. Gattis's finding that "there is evidence that [Plaintiff] experiences significant symptoms of Posttraumatic Stress Disorder and Major Depressive Disorder" conflicts with the ALJ's Step Three finding that Plaintiff has no more than moderate limitations in each of the four broad areas of mental functioning. (*Id.* at 332; Doc. 19, at 8)).

Initially, the Court notes that Plaintiff incorrectly refers to Dr. Gattis's finding of "significant symptoms" as a medical opinion. "A medical opinion is a statement from a

medical source about what [a claimant] can still do despite [his or her] impairment(s)" and whether a claimant has a limitation or restriction in the ability to perform physical, mental, or other demands of work or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Although Dr. Gattis generally that found Plaintiff had "significant symptoms" of his mental diagnoses, the statement did not reflect judgment on what Plaintiff could still do despite his impairments or specific limitations or restrictions in Plaintiff's ability to perform mental demands of work. Instead, Dr. Gattis's finding is considered "other medical evidence." *Id.* § 404.1513(a)(3) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis.").

The Court is not persuaded by Plaintiff's argument that a general finding of "significant symptoms" is inconsistent with the ALJ's Step Three determination. At Step Three, the ALJ considered whether Plaintiff met or medically equaled the criteria of listings 12.04 (depressive, bipolar and related disorders) and 12.15 (trauma and stressor-related disorders). (AR, at 18). To establish the "paragraph B" criteria for listings 12.04 and 12.15, Plaintiff must have at least one "extreme" limitation or two "marked" limitations in the following areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Part 404, Subpart P, App. 1 §§ 12.04(B), 12.15(B). The ALJ found that Plaintiff had only mild or moderate limitations in the four areas. (AR, at 18).

In developing the RFC, the ALJ noted Dr. Gattis's finding that Plaintiff experienced "significant symptoms" as a result of PTSD and major depressive disorder, (*id.* at 22), but he also cited evidence from the record in support of his Step Three analysis of the four areas of mental functioning leading to his conclusion that Plaintiff had no more than moderate limitations. (*See id.* at 18-19, 23). The ALJ specifically found that "[t]he overall evidence documents that the claimant's psychotropic medications when taken as prescribed are relatively effective in managing the claimant's symptoms and controlling mood." (*Id.* at 19). Having considered the ALJ's discussion of the evidence, the Court finds the Step Three determination was supported by substantial evidence. While Plaintiff contends that Dr. Gattis's notation requires a different result, the argument is no more than a request to reweigh the evidence, which is not this Court's role. *Deherrera v. Comm'r, SSA,* 848 F. App'x 806, 810 (10th Cir. 2021).[5] The Court finds no error in the ALJ's consideration of Dr. Gattis's report.

### B.      The ALJ Did Not Err in Analyzing Plaintiff's Symptoms.

Plaintiff challenges the ALJ's symptom analysis on multiple fronts. (Doc. 19, at 3-8, 10-11). He argues that some of the facts on which the ALJ based the symptom analysis are plainly incorrect. He also contends the ALJ failed to discuss evidence in the record regarding his mental impairment. Finally, he asserts the ALJ's conclusion that "there is no

---

[5] In the section of his brief addressing Dr. Gattis's report, Plaintiff also argues the ALJ did not discuss evidence regarding his mental impairment. (Doc. 19, at 10-11). This argument is addressed below.

indication in the overall record that [Plaintiff] could not be more functional" is not supported by the record.

### 1. Legal Standards For Considering a Claimant's Symptoms.

When evaluating a claimant's symptoms,[6] an ALJ must consider: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant has received; (6) any measures other than treatment an individual uses or has used to relief pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions. *See* Social Security Ruling ("SSR") 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017).

The ALJ must determine whether the claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." *Id*. at *7.[7] If they are consistent, then the ALJ

---

[6] The SSA defines "symptom" as "the individual's own description or statement of his or her physical or mental impairment(s)." SSR 16-3P, 2017 WL 5180304, at *2.

[7] "This evaluation, previously termed the 'credibility' analysis, is now termed the 'consistency' analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a 'consistency' and 'credibility' analysis. *See Brownrigg v. Berryhill*, 688 F. Appx. 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority." *Tina G.B., v. Kijakazi*, 2021 WL 3617449, at *3, n.2 (N.D. Okla. Aug. 16, 2021). *See also Olson v. Comm'r, SSA*, 843 F. App'x 93, 97, n.3 (10th Cir. 2021) ("The Commissioner no longer uses the term 'credibility' in evaluating a claimant's statements. The analysis, however, remains substantially the same.") (internal citation omitted).

"will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id*. If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id*. Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008). Provided the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotation marks omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*. Furthermore, the ALJ is entitled to resolve evidentiary conflicts. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

Although the "ALJ is not required to discuss every piece of evidence," he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, "it is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

### 2. The ALJ's Symptom Analysis Is Supported By Substantial Evidence.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's "statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR, at 23).  The ALJ discussed several examples of inconsistency:

> Characterization of pain is not consistent with medical records.  There is infrequent treatment or gaps in treatment.  *There is absence of physical therapy or other rehabilitative therapy.*[8]  Although [Plaintiff] testified to limited activities of daily activity at the hearing, there is no indication in the overall record that [Plaintiff] could not be more functional.  While [Plaintiff] testified his headaches are exacerbated by light and loud noise; *during consultative examination, he did not ask that the florescent lights be turned off because of headache pain.*[9]  [Plaintiff] stated he is unable to keep his left knee fully extended or flexed for long periods of time; however, there was no evidence of knee crepitus or effusion on examination.  There were no neurological deficits.  Straight leg raise testing was negative bilaterally in the seated and supine positions and he ambulated in a safe and stable gait at a normal speed without the use of any assistive device.  During psychological evaluation, [Plaintiff] drove himself to the appointment.  His posture was normal and his gait was noted to be stable.
>
> [Plaintiff] has not experienced any catastrophic events/injuries or developed multiple progressions and complications resulting in considerable compromise of physical functions.
>
> When asked about symptoms of his mental health condition, he listed, "helpless, unaccomplished, angry, sad, depressed, and scared."  His intelligence level was globally assessed to be in the normal range of functioning.  His concentration and working memory appeared to be adequate, as he spelled world as W-O-R-L-D and then backwards, "D-L-R-O-W."  He did not miss any of the subtractions on the Serial 7s.  Moreover, on the MoCA, [Plaintiff] scored 29/30, placing him over the cut off score for the normal range of cognitive functioning.  [Plaintiff's] self-harm/suicidal ideation was judged to be minimal at this time, with no current thoughts of suicide or self-injury in any way.  Nevertheless, mental status examinations have demonstrated no more than "moderate" degrees of limitation.

---

[8] This statement contradicts record evidence, as discussed below.

[9] This statement contradicts record evidence, as discussed below.

11

(*Id.*) (emphasis added).

Plaintiff contends two of the examples listed by the ALJ in support of the symptom analysis are contradicted by the medical record. (Doc. 19, at 5-6). Although the ALJ partially based his analysis on the "absence of physical therapy or other rehabilitative therapy," records from the VA indicate Plaintiff received sixty-five minutes of physical therapy intervention for his knee on November 16, 2018. (*Compare* AR, at 23, to *id*. at 301-03). The ALJ also noted that Plaintiff "**did not** ask that the florescent lights be turned off because of headache pain" during his consultative examination, but Dr. Gattis's report indicates Plaintiff "**did ask** that the florescent lights be turned off because of headache pain" and that Plaintiff "s[at] forward with his head in his hands at times." (*Compare* AR, at 23, to *id*. at 331) (emphasis added).

The Commissioner admits the ALJ's factual findings related to physical therapy and fluorescent lights were erroneous, but argues such inaccuracies do "not undermine the ALJ's well-supported [RFC] finding." (Doc. 26, at 14). The Commissioner further argues the ALJ's misstatements of fact amount to harmless error because "the ALJ identified other valid reasons" in support of the RFC. (*Id*.) The Court finds that substantial evidence supports the ALJ's decision notwithstanding the factual misstatements.

Plaintiff testified he has headaches every day. (AR, at 36). He also testified that when he gets a headache, he takes a pain pill and goes to sleep. (*Id.* at 37). Because lights make his headache worse, Plaintiff testified that he dims the lights. (*Id.* at 38). In his function report, Plaintiff stated that migraines make him "not able to function at all," including an inability to look at monitors or communicate with people. (*Id.* at 245). He

also noted that "migraines stop[] him from completing task[s], concentration, [and] following instructions due to pain." (*Id.* at 250).

Although the ALJ misstated the record when he noted Plaintiff did not request to turn off the fluorescent lights at his mental-status examination, the decision contains other reasons for finding that Plaintiff's alleged symptoms from his migraine headaches are not consistent with the record evidence. The ALJ noted medical records in which Plaintiff reported Sumatripitan "works well to abort his headaches" and that he reported "infrequent headaches." (AR, at 21 (citing *id.* at 286)). And despite Plaintiff's allegation that his headaches make him unable to communicate with people and impact his concentration, the ALJ noted that during Plaintiff's mental-status examination – the same examination at which he requested the fluorescent lights be turned off – he was cooperative, able to build a rapport with the examiner, had normal eye contact, and was able to take the Montreal Cognitive Assessment and score in the range of normal cognitive functioning. (*Id.* at 22). The decision also reflects the ALJ found that Plaintiff was able to maintain meaningful relationships with family and friends, interact well with medical providers and staff, and stay on task during medical examinations. (*Id.* at 18-19).

The ALJ referenced Plaintiff's claim of functional limitations related to his left knee. (AR, at 20). Despite the ALJ's failure to reference the record indicating that Plaintiff underwent one session of physical therapy, the ALJ gave other reasons throughout the decision to find that Plaintiff's allegations were inconsistent with the record evidence. He noted that Plaintiff acknowledged Naproxen worked well for his knee pain. (*Id.* at 21). The ALJ also addressed findings from Dr. Azadgoli's consultative examination, indicating

13

range of motion in his knee was within normal limits, there was no evidence of knee crepitus or effusion, and he had an ability to ambulate in a safe and stable gait at normal speed without the use of an assistive device.[10] (*Id.* at 21, 23). The ALJ also noted that at his mental status examination, Plaintiff's "posture was normal and his gait was stable" and that at his yearly checkup on July 30, 2019, he "ambulated without difficulty." (*Id*. at 22).

When evaluating a claimant's symptoms, "common sense, not technical perfection" guides the Court's analysis. *Keyes-Zachary*, 695 F.3d at 1167. As noted above, the ALJ relied on a variety of evidence in coming to his conclusion that Plaintiff's migraine headaches and left-knee symptoms were not as limiting as Plaintiff asserted. The Court finds the other evidence addressed by the ALJ is sufficient to amount to substantial evidence to support the decision. *See Guillar v. Comm'r, SSA*, 845 F. App'x 715, 720-21 (10th Cir. 2021) (noting a decision "withstands substantial-evidence review" when a "decision has more than a scintilla of evidentiary support."). Because the symptom analysis is supported by substantial evidence, the ALJ did not commit reversible error. *See Scott v. Berryhill*, 695 F. App'x 399, 406 (10th Cir. 2017) (affirming where "the ALJ's credibility assessment, while perhaps not perfect, [was] supported by substantial evidence"

---

[10] Plaintiff contends his left knee pain was not related to those issues, but instead was related to an inability to keep his left knee fully extended or flexed for long periods of time. (Doc. 19, at 6-7). He contends this amounted to picking and choosing. But, the ALJ specifically referenced Plaintiff's report to Dr. Azadgoli that he was unable to keep his left knee fully extended or flexed for long periods of time. (AR, at 21). Other than the one instance of physical therapy addressed above, Plaintiff does not direct the Court to any evidence in the record regarding Plaintiff's knee mobility that the ALJ should have discussed. Plaintiff simply asks the Court to reweigh the evidence, which it cannot do. *Deherrera,* 848 F. App'x at 810.

not challenged by the claimant); *Wahpekeche v. Colvin*, 640 F. App'x 781, 784 (10th Cir. 2016) (affirming where "even assuming the ALJ drew an incorrect inference from this record, reversal is not required" because the inference "was merely one of several factors the ALJ considered in assessing credibility"); *Green v. Saul*, 2020 WL 738549, at *5 (W.D. Okla. Jan. 21, 2020) (finding "any resulting error [did] not undermine the remainder of the substantial evidence supporting the ALJ's decision" despite the ALJ misconstruing the medical records), *adopted*, 2020 WL 734477 (W.D. Okla. Feb. 13, 2020).

Plaintiff also contends the ALJ failed to discuss "the true details of [his] testimony about his treatment for mental illness, the fact his father was a pastor and was counseling him, [and] was also in mental health." (Doc. 19, at 11). In support, Plaintiff cites a record from his July 30, 2019, yearly check-up indicating he used his father for counseling. (AR, at 340). The ALJ considered the record, but did not reference the portion of the record discussing counseling. (AR, at 22). This evidence is not particularly probative – no counseling records appear in the record, the ALJ recognized Plaintiff's affective disorder and PTSD as severe impairments, and the RFC limits Plaintiff to only occasional interaction with the public, coworkers, and supervisors. Even if the ALJ erred by omitting the information, the error is harmless. The ALJ thoroughly discussed Plaintiff's mental status examination and supported his finding that Plaintiff was not as limited by his mental impairment as he testified. (AR 18-19, 21-23). The Court can "confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way" based on Plaintiff's pastoral counseling from a family member. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (addressing harmless-error analysis).

Finally, Plaintiff takes issue with the ALJ's statement that "although [Plaintiff] testified to some limited activities of daily living at the hearing, there is no indication in the overall evidence of record that [Plaintiff] could not be more functional." (AR, at 23). Plaintiff contends the ALJ did not support this statement with evidence. (Doc. 19, at 5). But, as noted above, the ALJ thoroughly explained – citing evidence – why Plaintiff was less limited than he asserted. (AR, at 23). Plaintiff cites medical records in which he reported having interrupted sleep due to night terrors, obstructive sleep apnea, and that his PTSD and traumatic brain injury cause major depression and migraines. (Doc. 19, at 5). But, the ALJ considered these issues in the decision. (AR, at 17-24). While Plaintiff contends the evidence supports a different outcome, the argument amounts "to [an] invitation[] to reweigh the evidence, which [the Court] cannot do." *Deherrera,* 848 F. App'x at 810.

## VI. Conclusion

For the reasons discussed above, the Court **AFFIRMS** the decision of the Commissioner.

ENTERED this 13th day of September, 2021.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE